UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JIMMY ROUGLEY, JR.** <br> **DOC #242262** <br><br> **VERSUS** <br><br> **GEO GROUP, ET AL** | **CIVIL ACTION NO. 2:10–cv-1094** <br><br> **SECTION P** <br><br> **JUDGE MINALDI** <br><br> **MAGISTRATE KAY** |

## REPORT AND RECOMMENDATION

Before the court is the *pro se* civil rights complaint filed *in forma pauperis* by plaintiff Jimmy Rougley on July 20, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC), and he is incarcerated at Avoyelles Correctional Center (AVC) in Cottonport, Louisiana. He complains that he was the victim of food poisoning and received inadequate medical attention while (previously) incarcerated at Allen Correctional Center (ACC) in Kinder, Louisiana. He names the following as defendants herein: ACC Deputy Warden Allimon, ACC Warden Terry Terrell, ACC Captains Langley and Garnett; ACC food production and service employee Emmanuel; ACC nurses Shirley Fontenot, Tammy Fonenot, and Loretta; ACC physician T. Hart, and GEO Group, Inc.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

Plaintiff states that on September 1, 2008, he was placed in administrative segregation. Doc. 4, p. 3. At that time, he was forced to eat food prepared by defendant Emmanuel. It was then that plaintiff first began to experience symptoms of food poison. *Id.* In fact, he claims that

he contracted E. Coli and Streptococcus as a result of Emmanuel's food. Doc. 4, p. 4. More specifically, he claims that Emmanuel obtained the cheapest food possible by buying food through private sources rather than commercial vendors. Doc. 4, p. 9. Plaintiff alleges that the private sector food was not inspected or approved by the FDA. *Id.* Further, plaintiff claims that the food was contaminated with parasites and harmful bacteria. *Id.*

Plaintiff states that he almost died from the effects of the food poisoning and that in the beginning of October 200, his health began to rapidly deteriorate. *Id.* He suffered with dizziness, high fever, nausea, rapid weight loss, headaches, stomach cramps, vomiting, and diarrhea. Doc. 4, p. 10. By mid-November 2008 through the latter part of January 2009 he experienced a flow of yellow liquid and blood from his rectum. *Id.* Plaintiff states that on two occasions, security officers saw the liquid/blood and showed/reported same to the medical department but to no avail. *Id.*

A medical appointment was scheduled for plaintiff on January 30, 2009; however, he claims that when he got to the infirmary, he and defendant Loretta had a disagreement and he was ordered to return to his cellblock. Doc. 4, p. 11. The appointment was rescheduled for February 3, 2009. *Id.* At that time, he was seen by defendant Tammy Fontenot, who stated that she would not give plaintiff a rectal exam. Doc. 4, p.12. Nurse Guillory performed the exam wherein she collected samples. *Id.* Plaintiff states that the samples were taken to Dr. Hart. *Id.* Nurse Guillory returned from Dr. Hart's office with antibiotics. *Id.* Plaintiff claims that he was diagnosed with streptococcus, E. Coli, and hemorrhoids. *Id.* He began taking the medication, which made his condition worse. *Id.* On March 20, 2009, he was scheduled for treatment at Huey P. Long Hospital. *Id.* As to the actions of each defendant, plaintiff claims the following:

(1) Defendant Emmanuel – deliberately served outdated, disease infested food;

    (2)    Defendants Hart, S. Fontenot, T. Fontenot, and Loretta – medical malpractice and negligence;

    (3)    Defendants Terrell and Allimo – deliberate indifference and negligence;

    (4)    Defendant Langley – deliberate indifference, negligence, and malfeasance in office; and

    (5)    Defendant Garnett – cruel and unusual punishment.

Plaintiff's claims against the GEO Group, Inc., are not specified.

As relief for the above, plaintiff seeks compensatory and punitive damages. Doc. 4, p. 13.

## LAW AND ANALYSIS

### I. Frivolity Review

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Under 28 U.S.C. § 1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(I) and (ii); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).

When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70

F.3d 397, 400 (5th Cir. 1996); *Bradley,* 157 F.3d at 1025.

## II. 42 U.S.C. § 1983

### a. *Standard of Initial Review*

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus, an initial inquiry in a lawsuit filed under § 1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under § 1983. In order to hold the defendants liable under 42 U.S.C. § 1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *See Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985).

The court is convinced that plaintiff has presented the best case which could be presented by him under the circumstances, and that further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for relief, that his claims are frivolous as a matter of law, and that his complaint should therefore be dismissed with prejudice.

### b. *Food Claims*

In the present case, plaintiff contends that he contracted E. Coli and Streptococcus as a result of contaminated food prepared by defendant Emmanuel. In order to state a civil rights claim cognizable under 42 U.S.C. § 1983, a plaintiff must allege facts to support his broad allegations. *See Vinson v. Heckmann*, 940 F.2d 114, 115 (5th Cir. 1991); *Wesson v. Oglesby*,

910 F.2d 278, 280 (5th Cir. 1990).

Conclusory allegations are insufficient. *R.A.M. Al-Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995). The Plaintiff has offered nothing other than conclusory allegations concerning the cause of his alleged staph and E. Coli infections, including his claim that such infections were caused by the food served to the inmates in administrative segregation. Similarly his claims about contaminated food and food poisoning were conclusory. Such claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact, thus they should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

  c. *Negligence Claims*

In this case, plaintiff alleges negligence as to several of the defendants.

As is evident from the court's analysis given herein, the court construed plaintiff's complaint more liberally than simply asserting a claim for negligence against the defendants. Claims to recover damages for personal injuries resulting from the alleged negligence of defendants are not cognizable under § 1983. Such claims are redressed under the general tort provisions of Louisiana law as negligence claims. *See* Louisiana Civil Code Article 2315; *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995): *see also Hudson v. Palmer*, 104 S.Ct. 3194 (1984); *Parratt v. Taylor*, 101 S.Ct. 1908, 1913-17 (1981).

  d. *Medical Care Claims*

Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an

inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d 458, 458-59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Dep't. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather, supra; Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall*, supra. Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321; *see also Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) (A disagreement with a doctor

over the method and result of medical treatment does not require a finding of deliberate indifference). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather, supra*.

In the instant case, the information and attachments to plaintiff's complaint show that plaintiff received medical treatment, including doctors' visits (both in the prison and at an outside hospital), testing, and medication. In fact, a grievance filed by plaintiff in regard to his claims was remanded at the second step stage for further review. Doc. 4, p. 18. The amended second step response stated that the DOC Secretary's office had received and reviewed ACC documentation. Specifically, the response stated that the ACC medical staff was well aware of plaintiff's medical condition and had adequate information upon which to base decisions concerning his treatment. The response noted that medical opinion was controlling and that the medical care received by plaintiff was deemed adequate and that no further investigation was warranted.

Plaintiff's allegations, at most, state a disagreement between himself and the medical staff regarding the procedures to treat his medical problems. As previously stated, claims such as those made by plaintiff are insufficient to establish that a constitutional violation has occurred. Absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison. *See Shaw v. Murphy*, 121 S.Ct. 1475 (2001); *Procunier v. Martinez*, 94 S.Ct. 1800 (1974).

The decision regarding plaintiff's treatment is best left to the prison officials. The facts of this matter clearly do not demonstrate that the defendants refused to treat him, ignored his complaints, intentionally treated plaintiff incorrectly or evince a wanton disregard for plaintiff's medical needs. The evidence before the court simply does not support a finding of deliberate

indifference. Accordingly, this court finds that plaintiff's medical care claims should be dismissed for failing to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

    *e.*     *Supervisor Liability*

Plaintiff names ACC Deputy Warden Allimon, ACC Warden Terry Terrell, ACC Captains Langley and Garnett as defendants. To the extent that he names these defendants in a supervisory capacity, such claims are not cognizable as it is well settled that supervisory officials may not be held liable under § 1983 through the doctrine of *respondeat superior*. *See Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); *Jennings v. Joshua Indep. School Dist.*, 877 F.2d 313 (5th Cir. 1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 119 L.Ed.2d 226 (1990).

To be liable under § 1983, supervisory officials must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Here, plaintiff fails to set forth a constitutional claim against these parties. There are no allegations that they were personally implicated in any alleged constitutional deprivation or that they implemented any policy which acts as a constitutional deprivation. Thus, these claims should be dismissed for failure to state a claim upon which relief may be granted.

Finally, it appears that plaintiff seeks to hold the GEO Group Inc. liable under 42 U.S.C. § 1983 for the acts of its employees. However, just as a municipal corporation is not vicariously liable for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights. *See Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). A private corporation is liable under § 1983 only when an official

policy or custom of the corporation causes or is the "moving force of the constitutional violation." *Id*. Plaintiff's complaint is devoid of any allegations that an official policy or custom of the GEO Group Inc. was the "moving force" behind its employees' alleged deprivation of plaintiff's civil rights. Accordingly, plaintiff's claims against the entity should be dismissed.

Therefore, **IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglas v. United Serv. Auto. Ass'n,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 7th day of November, 2011.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE